PACIFICORP CAPITAL,
INC., Appellant,

v.

The UNITED STATES, Appellee,

International Business Machines
Corporation, Intervenor.

No. 88–1149.

United States Court of Appeals,
Federal Circuit.

July 21, 1988.

Michael E. Geltner, Washington, D.C., argued, for appellant.

John S. Groat, Dept. of Justice, Washington, D.C., argued for appellee U.S. and intervenor IBM.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and Joseph A. Kijewski, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief, for appellee. Also on the brief was Janice M. Bellucci, Office of General Counsel, U.S. Dept. of the Air Force, of counsel.

Michael L. Burack, Wilmer, Cutler & Pickering, Washington, D.C., was on the brief, for intervenor IBM.

Before BISSELL, MAYER, and MICHEL, Circuit Judges.

BISSELL, Circuit Judge.

Pacificorp Capital, Inc. (Pacificorp) appeals the decision of the General Services Board of Contract Appeals (GSBCA), *Pacificorp Capital, Inc.*, GSBCA No. 9231–P, 88–1 BCA ¶ 20,330, dismissing for lack of jurisdiction Pacificorp's bid protest of a computer contract award. We affirm.

## BACKGROUND

On September 30, 1987, the United States Air Force awarded a contract to International Business Machines Corporation (IBM) to upgrade a central processing unit (CPU) the Air Force used to support several of its weapon systems. The contract stated that the Avionics Integrated Support Facility (AISF) at Tinker Air Force Base in Oklahoma would use the CPU to support weapons such as the air-launched cruise missile, and the B-52 bomber. Specifically, the CPU would be used in AISF's computer system to support the on-board computers of these weapon systems by debugging, modifying, and enhancing their software, and by engaging in flight simulations to test the software.

Only Pacificorp and IBM bid for this contract. After the Air Force awarded the contract to IBM, Pacificorp promptly protested. IBM intervened and moved to dismiss for lack of jurisdiction. The Air Force filed a similar motion. The GSBCA held that it had no jurisdiction over the protest, and dismissed the case. Subsequently, the GSBCA denied Pacificorp's motion for reconsideration. *Pacificorp Capital, Inc.*, GSBCA No. 9231–P–R, 88–1 BCA ¶ 20,410. Thereafter, Pacificorp appealed.

## ISSUES

1. Whether Pacificorp's appeal is moot.
2. Whether the GSBCA had jurisdiction to adjudicate Pacificorp's bid protest.

## OPINION

### I

■ The government notes that the CPU at issue in this case has already been procured from IBM, and installed. The government, therefore, contends that this appeal is moot. We cannot accept this argument.

Here the GSBCA has dismissed Pacificorp's protest for lack of jurisdiction. If we were to reverse that holding, the GSBCA would then consider whether the Air Force violated any statute or regulation in awarding the subject contract to IBM.

40 U.S.C. § 759(f)(5)(B) (Supp. IV 1986). Regardless of whether the procurement has already been completed, section 759(f)(5)(C) expressly permits the GSBCA to grant a successful protester an award of protest and bid preparation costs. The availability of such relief is enough to maintain this as a "live" controversy.

### II

■ Section 908 of the Department of Defense Authorization Act, 1982 (Warner amendment), 10 U.S.C. § 2315 (1982), excluded certain Department of Defense (DOD) procurements from the General Services Administration's broad authority under 40 U.S.C. § 759 (Supp. IV 1986) to purchase automated data processing equipment (ADPE) on behalf of the government. The Paperwork Reduction Reauthorization Act of 1986, § 101(m), 44 U.S.C.A. § 3501 et seq., 40 U.S.C. § 759(a)(2)(A)–(3)(D) (Supp. IV 1986), incorporated these exclusions into the GSBCA's bid protest authority. As it now stands, the GSBCA does not have bid protest jurisdiction over

(C) the procurement by the Department of Defense of automatic data processing equipment or services if the function, operation, or use of which—

. . . .

(iv) involves equipment which is an integral part of a weapon or weapons system; or

(v) is critical to the direct fulfillment of military or intelligence missions, provided that this exclusion shall not include automatic data processing equipment used for routine administrative and business applications such as payroll, finance, logistics, and personnel management. . . .

§ 759(a)(3)(C)(iv)–(v).

The GSBCA determined that the CPU at issue was not an integral part of a weapon system. It, therefore, concluded that this provision was no bar to its jurisdiction. 88–1 BCA ¶ 20,330, at 102,774. The GSBCA went on to hold, however, that because the CPU was critical to the direct fulfillment of a military mission, the

GSBCA did not have authority to hear this protest. *Id.*

The parties argue vigorously concerning the "critical to the direct fulfillment" language, but say almost nothing about the "integral part of a weapon" exemption. Effectively, they have put in issue only the "critical to the direct fulfillment" criterion. We decide the case on that basis and do not reach the "integral part of a weapon" exemption.

The language of section 759(a)(3)(C)(v) makes clear that ADPE used for routine administrative purposes is not critical to the direct fulfillment of a military mission. The Warner amendment's legislative history supports this view. 127 Cong.Rec. 9,800 (1981) (statement of Sen. Warner) (stating that DOD exemption applies to mission areas that most clearly and directly touch on national defense, and not to ADPE used for routine administrative purposes).

The Warner amendment's legislative history, however, sheds no further light on how to interpret the meaning of "critical to the direct fulfillment" of a military mission. In such circumstances, principles of statutory construction counsel us to give these words their common meaning. *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 465, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30 (1968) (stating that absent persuasive reasons to contrary, words in statute should be given common meaning); 2A Sutherland Statutory Construction § 46.01 (4th ed. 1984 & Supp.1987) (stating that absent compelling reasons to hold otherwise, courts assume legislature intended words in statute to have ordinary meaning).

The Dictionary discloses that (1) *critical* means "crucial" or "indispensable," Webster's Third New International Dictionary 538 (1976); (2) *direct* means "proceeding from one point to another ... without deviation or interruption," *id.* at 640; and (3) *fulfillment* means "to carry out" or "accomplish." *Id.* at 918. These definitions, along with the Warner amendment's legis-lative history noted above, lead us to interpret the "critical to the direct fulfillment" exemption to mean that the GSBCA has no bid protest jurisdiction over DOD procurements of ADPE that are crucial to accomplishing a military mission if the ADPE is not compromised by routine administrative tasks.*

The GSBCA found the following facts regarding the AISF computer system, of which the subject CPU is a part: (1) AISF's computer system debugs, modifies and enhances the software used in the weapon systems AISF's computer supports; (2) AISF's computer system is used in flight simulations to test the same weapon systems' software; (3) the weapon systems' software modified by AISF's computer system is reintegrated into the weapon systems for direct use without any additional change or preparation; (4) the weapon systems' software is essential to the proper functioning of the weapons; (5) AISF's computer system is exclusively dedicated to weapons systems' support, and is not properly configured for routine administrative and business applications. 88-1 BCA ¶ 20,330, at 102,771–73. These facts are supported by substantial evidence. 41 U.S. C. § 609(b) (1982).

These facts satisfy our interpretation of the "critical for the direct fulfillment" exemption. Therefore, we affirm the decision of the GSBCA dismissing Pacificorp's protest for lack of jurisdiction.

AFFIRMED

---

* We do not decide in this case how much, if any, administrative application an ADPE may have without being compromised.