CCL SERVICE CORP., Plaintiff,

and

Severn Companies, Inc., Intervenor,

v.

The UNITED STATES, Defendant,

and

CHE Consulting, Inc., Intervenor.

PCC Federal Systems, Inc., Plaintiff,

and

Severn Companies, Inc., Intervenor,

v.

The United States, Defendant,

and

CHE Consulting, Inc., Intervenor.

No. 98–664C, 98–692C.

United States Court of Federal Claims.

May 10, 1999.[1]

---

1. This opinion was issued under seal on April 30, 1999. Pursuant to ¶ 3 of the ordering language, the parties were to identify protected/privileged material subject to deletion. There were no requests for deletions.

Joseph J. Petrillo, Washington, DC, for plaintiff CCL Service Corp. Gerard F. Doyle, Arlington, VA, for intervenor Severn Companies, Inc. David R. Hazelton, Washington, DC, for plaintiff PCC Federal Systems, Inc.

Geoffrey J.L. Brown, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

L. James D'Agostino, McLean, VA, for intervenor CHE Consulting, Inc.

## OPINION

MILLER, Judge.

This post-award bid protest is before the court on defendant's motion for judgment on the pleadings or, in the alternative, suggestion that the court dismiss for lack of jurisdiction. Plaintiffs question whether the termination for convenience of the subject contracts and cancellation of the solicitation deprives this court of jurisdiction to consider the award of any further relief. They cross-moved for partial summary judgment, contending that the termination for convenience and failure to defend the award amounts to an admission of impropriety.

## FACTS

On August 5, 1998, the Defense Information Systems Agency ("DISA") awarded the seven contracts at issue in this case pursuant to Request for Proposals ("RFP" or "solicitation"), No. DCA 200–97–R–0014 to CHE Consulting, Inc. ("CHE").[2] These contracts provided for various computer maintenance services for Department of Defense megacenters. Plaintiff CCL Service Corporation ("CCL"), filed a protest to this award on August 18, 1998. Plaintiff PCC Federal Systems, Inc. ("PCC"), filed a similar protest on August 28, 1998. The court granted CHE's motion to intervene on September 10, 1998. On September 22, 1998, the court permitted the intervention of Severn Companies, Inc. ("Severn").[3]

The court held an initial status conference on August 20, 1998. Per the contract, performance was to begin on October 1, 1998. Because the lawsuit was filed several weeks before performance commenced, plaintiff CCL did not seek a temporary restraining order or preliminary injunction. See Transcript of Proceedings, CCL Serv. Corp. v. United States, No. 98–664C, at 3–4 (Fed.Cl. Aug. 20, 1998).[4] The court instructed defendant to file the administrative record by September 9, 1998. Thereafter, a status conference was held on September 11, 1998, following which the protests of CCL and PCC were consolidated by agreement of the parties on September 14, 1998. Having consolidated these two cases and allowed the intervention of Severn and CHE, the court had before it most of the offerors under this solicitation, representing the majority, if not all, of the major players in the industry.

During the status conference, CHE characterized the protest in the following manner:

---

2. The following contracts are at issue in this case: DCA 200–99–D–0004, DCA 200–99–D–0005, DCA 200–99–D–0006, DCA 200–99–D–0007, DCA 200–99–D–0008, DCA 200–99–D–0009, and DCA 200–99–D–0010. The parties also refer to the acting agency as the Defense Information Technology Contracting Organization ("DITCO"), which is a subsidiary of DISA. For purposes of this opinion, references to DISA shall be inclusive of DITCO.

3. To avoid confusion, plaintiffs CCL and PCC, along with intervenor Severn, at times shall be referred to collectively as "plaintiffs."

4. With regard to the protest by CCL, a protective order was entered on August 21, 1998. The court entered a similar order on September 10, 1998, regarding PCC's protest.

I think what we're looking at here is we have Ford and Chevrolet sitting over here with their maintenance programs, and you have the third-party person in CHE who can do it as well, and I think it's ... similar[ ] to the IBM equipment when IBM had a problem when Andahl came out as the cheaper competitor for IBM equipment.

Transcript of Proceedings, *CCL Serv. Corp. v. United States,* Nos. 98–664C & 98–692C, at 26–27 (Fed.Cl. Sept. 11, 1998) (hereinafter "Sept. Tr."). Defense counsel offered a similar analogy:

If the Government bought a fleet of Cadillacs, can only Cadillac service[ ] the Cadillacs, what if Bob's Garage can service the Cadillacs perfectly as well at a cheaper price? That seems to be what is going on now. There is a big upheaval in the industry because these third parties are able to service the contracts much more price effectively.

Sept. Tr. at 28. Plaintiffs challenged the sufficiency of CHE's proposal, charging that CHE failed to demonstrate that it was capable of performing the tasks required under the contract and, hence, did not fulfill the requirements of the solicitation. Plaintiffs also contested CHE's ability to perform at the prices it proposed.

Focusing on DISA's evaluation of CHE's bid and the subsequent award, plaintiffs sought discovery with regard to, *inter alia,* the evaluations of the Technical Evaluation Review Panel (the "TERP"). Specifically, plaintiffs requested depositions of the contracting officer, the TERP Chairman, and one TERP evaluator to determine how CHE

was given an acceptable evaluation and whether the evaluation documentation was available, or, in the alternative, what became of this documentation. Documentation regarding the TERP's evaluation was mandatory under the provisions applicable to this procurement.[5] Each member of the TERP was required to complete an "Individual Evaluation" worksheet providing commentary and details regarding assessment of each proposal. Defense counsel acknowledged that these evaluations were absent from the record. In place of these evaluations, defense counsel explained: "The way the best-and-final offers are reviewed is by committee, and each committee member's signature on the final review indicates that they have answered to their satisfaction all of the outstanding issues for that given proposal.... There are no written notes." Sept. Tr. at 32. The court rejected the affidavit submitted by defendant from the TERP president as insufficient to fill this gap in the record. *See CCL Serv. Corp. v. United States,* Nos. 98–664C & 98–692C (Fed.Cl. Oct. 7, 1998) (order granting limited discovery and outlining applicable case law); *see also GraphicData, LLC v. United States,* 37 Fed.Cl. 771, 779–80 (1997) (discussing appropriate circumstances in which supplementation of administrative record is permissible).

Finding that the administrative record did not contain the required documentation from the TERP, the court issued an order on October 7, 1998, permitting plaintiffs to take the limited depositions sought to establish the basis of the evaluators' ratings, and to determine the materiality of the failure to

---

**5.** DISA's technical evaluation plan required, in pertinent part:

> 4. *Technical Evaluation Procedures (TEP)*
> Proposals will be analyzed during the evaluation process against the requirements as stated in the RFP, in terms of the evaluation factors and subfactors described in the RFP. Each technical evaluator shall review each proposal. Each technical evaluator shall prepare an Individual Evaluation sheet for each proposal. Each evaluator is responsible for providing documentation of an impartial, equitable, and defensible evaluation....
> ....
> 6. *Technical Evaluation Review Panel (TERP) Report*

> After evaluating the proposals, evaluators will submit their worksheets to the TERP chairperson. These worksheets will be the basis of the TERP report.
> ....
> The TERP Chairperson will submit the final TERP report, signed by all TERP members, with any minority report attached, to the [Procuring Contracting Officer ("PCO")]. The TERP Chairperson will make the individual TERP members' worksheets available to the PCO, if requested.
> A technical evaluation of revised proposals will be necessary if discussions take place. If it is necessary, the same evaluation procedures shall apply as for the first evaluation.

prepare mandatory documentation.[6] The order recited:

> Plaintiffs have established that specific documentation was required under the solicitation provisions and, further, that such documentation is absent from the record. Neither CHE nor defendant contests that the final evaluation reports of the TERP members are not included in the record. Because this documentation was a mandatory requirement, the award of the contract absent such documentation put forth, at least facially, an arbitrary or capricious action. Moreover, without such documentation, the court is unable to determine if the contracting officer's decision has a reasonable basis. Thus, discovery should move forward.

The court, however, also warned the parties that deference was to be given to the agency and the court was without power to award the contract. *See* Transcript of Proceedings, *CCL Serv. Corp. v. United States*, Nos. 98–664C & 98–692C, at 35–36 (Fed.Cl. Oct. 6, 1998) (hereinafter "Oct. Tr.").[7]

**6.** During this discussion the court noted that, assuming the documentation revealed that the TERP evaluators found CHE's proposal to be compliant, the court would be loath to permit discovery to fuel a debate among competitors as to the underlying merits of the solicitation. The TERP members are responsible for satisfying themselves as to a proposal's sufficiency. *See* Transcript of Proceedings, *CCL Serv. Corp. v. United States*, Nos. 98–664C & 98–692C, at 8–10 (Fed.Cl. Oct. 6, 1998).

**7.** On October 5, 1998, CHE moved to dismiss pursuant to RCFC 12(b), contending that CCL's protest was untimely because CCL "knew the facts upon which its protest is based, more than six months prior to the awards to CHE.... Under applicable bid protest precedent, grounds of a protest known prior to the award of a contract cannot be raised after award in a post-award protest." CHE's Br. filed Oct. 5, 1998, at 2. On this basis CHE argued that CCL's protest should be dismissed. CHE also asserted that CCL's protest, as well as portions of PCC's and Severn's protests, should be dismissed for a lack of standing in that the award was to be issued to the offeror submitting the lowest bid, and CCL, PCC, and Severn did not submit the lowest bids for all the contracts at issue. Because CCL, PCC, and Severn are not the lowest price offerors on all contracts, CHE maintains that the protests should be dismissed in whole or in part. By order dated October 7, 1998, the court denied CHE's motion to dismiss for lack of standing, and permitted CCL to respond to CHE's motion

DISA issued a stop work order on September 16, 1998. The parties entered into a series of settlement negotiations. During a subsequent informal status conference on November 5, 1998, defendant indicated that DISA might take corrective action terminating the contracts at issue and conducting a resolicitation if a settlement was not forthcoming post-haste. Because the parties appeared genuinely interested in reaching a settlement, the court continued to provide its views of the case and the parties' respective positions based upon the limited facts before it. At no time did the court make findings with regard to the merits of these protests.[8]

Over the next two months, the proceedings were suspended as the parties engaged in contentious settlement negotiations. Despite defendant's candor and admirable efforts, the negotiations were often complicated by CHE's tendency to agree to the consensus reached by the parties, only later to retreat to its initial position.[9] On November 30,

to dismiss based on the timeliness of CCL's protest. In light of the course chosen by the parties, the court later suspended additional briefing on CHE's motion. *See CCL Serv. Corp. v. United States*, Nos. 98–664C & 98–692C (Fed.Cl. Oct. 7, 1998).

**8.** The court emphasizes the importance of providing the parties with a candid assessment of the case in the hopes of fostering settlement. Without such information the parties would have no motivation to resolve their dispute prior to trial. The parties indicated consistently their desire to resolve this matter and avoid additional litigation.

**9.** The court held a number of informal settlement conferences at the parties' request. These discussions often proved unproductive due to the parties' propensities to oscillate among positions. Most contention focused on CLIN 1, the first contract at issue. CHE demanded that it retain a portion of CLIN 1 at the sites at which it had been performing. It appeared that, in dividing up the contracts for purposes of settlement, CCL would become the primary contractor for CLIN 1 and potentially retain CHE as a subcontractor for two sites. Although CHE maintains that it would be willing to subcontract for PCC on CLIN 1, it refused adamantly any suggestion to do so for CCL because, *inter alia*, "CCL remains committed to its position that CHE is legally and physically incompetent to perform the subject Contracts." CHE's Br. filed Feb. 17, 1999, at 4.

1998, defendant informed the court of its intention to take corrective action. Ultimately, the parties' negotiations were unsuccessful.

On December 17, 1998, DISA issued a termination for convenience with regard to each of the seven contracts at issue. On December 18, 1998, defendant filed a motion for judgment on the pleadings or, in the alternative, for dismissal for lack of jurisdiction. Because DISA canceled the contract awards, defendant argues that this matter is now moot. Defendant further contends that the cancellation of the contract awards is the only relief CCL, PCC, and Severn would be entitled to if they prevailed in this litigation. Therefore, defendant argues that the "court should dismiss this case on the pleadings pursuant to [RCFC] 12(c)." Def's Br. filed Dec. 18, 1998, at 3.[10] In the alternative, defendant maintains that the termination for convenience and resolicitation divest the parties of standing such that this court does not have subject matter jurisdiction. *See* RCFC 12(h)(3).

On January 5, 1999, during yet another status conference, CCL contended that the matter before the court was not moot because defendant was not at liberty to choose the remedy to which plaintiffs were entitled. *See* Transcript of Proceedings, *CCL Serv. Corp. v. United States*, Nos. 98–664C & 98–692C, at 4 (Fed.Cl. Jan. 5, 1999) (hereinafter "Jan. Tr."). PCC and Severn concurred that the matter was not moot. PCC posited that the DISA cannot "take unilateral action, what it calls corrective action, that denies [plaintiffs] much of the relief that we seek in this case, and say that that disposes of this matter." Jan. Tr. at 10. Severn noted: "Although we have had a termination of the protested awards, we have not had a written notice of cancellation of the procurement, nor have we had an issuance of a resolicitation which could have overwhelmed our opportunity to still reach a settlement." Jan. Tr. at

11. The court again reminded the parties of the deference due the agency. *See* Jan. Tr. at 12–13. Observing that settlement was still desired by the parties and a potential solution to this matter, the court remarked:

> [Y]ou really have all of the parties together, and it is certainly the lion's share of the industry. And I think [Agency counsel] has alluded to the other scenario, which is that the Agency has a variety of options, some of which may be inclusive of some or all of you, some which may be exclusive. And [there] is a chance of all participating in some measure.

Jan. Tr. at 21.

By letters dated February 11, 1999 to each offeror, the contracting officer informed the parties that "the agency cannot and will not reaward the above referenced contracts nor will we reinstate CHE as the contractor under the RFP. The agency intends to solicit its Level I hardware maintenance requirements via new solicitation(s)." The December 17, 1998 termination for convenience stated that the contracts were being canceled, effective September 18, 1998, pursuant to Federal Acquisition Regulation (FAR) 52.249–2, 48 C.F.R. § 52.249–2 (1998), which provides, in pertinent part:

> (a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.

In their response to defendant's motion, filed January 19, 1999, CCL and Severn contend that dismissal of this action is not warranted because, although the contract awards have been terminated for convenience, DISA has not canceled the solicitation under which they were awarded.[11] Arguing that DISA

---

**10.** Defendant's motion for judgment on the pleadings will be treated as a motion for summary judgment pursuant to RCFC 56 because the parties have submitted materials outside of the pleadings for the court's consideration. *See* RCFC 12(c). Notwithstanding the suspension of proceedings during settlement negotiations, the

parties have had ample opportunity to submit all relevant evidence currently in their possession.

**11.** On February 17, 1999, PCC filed a response indicating that it joined generally in the joint opposition to defendant's motion filed by CCL and Severn. Specifically, "PCC wishes to state

could reaward the contract under the same solicitation to CHE, and thereby "repeat the errors and actions which [CCL] and Intervenor [Severn] objected to in their Complaints," CCL & Severn's Br. filed Jan. 19, 1999, at 2, CCL and Severn assert that "unless and until [DISA] cancels the solicitation upon which its improper awards to CHE were based, [DISA] remains at liberty to reinstate CHE as the Contractor." *Id.* at 3. CCL and Severn also contend that a case or controversy remains because relief, in addition to the cancellation of the awards to CHE, constitutes a material issue that cannot be resolved on the pleadings. Although informed repeatedly that the court would not award the contract to another offeror, CCL and Severn persist in their efforts to convince the court that each is the proper awardee to which the court should award the contract.[12] CCL and Severn also suggest that bid preparation and proposal costs may be an appropriate remedy because the "solicitation created an implied-in-fact contract," *id.* at 6, to treat all of the bids honestly and fairly. CCL and Severn maintain that DISA did not satisfy the standards set forth in 5 U.S.C. § 706 in conducting the procurement and that defendant "concedes the matter by not defending its award decision," and, that they therefore are entitled to bid preparation and proposal costs pursuant to 28 U.S.C.A. § 1491(b)(2). *See* 28 U.S.C.A. § 1491(b)(4). Moreover, CCL and Severn contend that the court has jurisdiction because "subject matter jurisdiction is not based upon contract, but instead upon 'any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.'" CCL & Severn's Br. filed Jan. 19, 1999, at 9 (quoting 28 U.S.C.A. § 1491(b)(1)).

On January 19, 1999, PCC and Severn responded to defendant's motion for judgment on the pleadings and defendant's motion to dismiss. Although PCC and Severn express a desire to continue settlement negotiations, they also suggest that, if settlement is unfruitful, the court should permit discovery regarding the interim subcontracts awarded to CHE by BDM International, Inc., a subsidiary of TRW, Inc. ("TRW/BDM"), which is currently performing some of the work covered by the subject contracts.[13]

On February 17, 1999, CHE filed a reply to CCL's and Severn's joint response to defendant's motion for judgment on the pleadings or, in the alternative, suggestion that the court dismiss for lack of jurisdiction, as well as a reply to PCC's and Severn's joint response to defendant's motion for judgment on the pleadings or, in the alternative, suggestion that the court dismiss for lack of jurisdiction. CHE's reply to PCC and Severn's joint response is largely a self-serving defense of its subcontract with TRW/BDM. CHE also argues that no evidence of bad faith exists on DISA's part, so that its termination for convenience and cancellation of the solicitation render this matter moot. CHE points out that, contrary to plaintiffs' contentions, the solicitation was canceled by letters dated February 11, 1999, thus no case or controversy exists in this litigation.

... that it agrees that dismissal is not appropriate, that it too is seeking relief beyond the termination of the subject contracts (*e.g.*, bid and proposal costs), and that summary judgment is appropriate in favor of Plaintiffs and Intervenor Severn." PCC's Br. filed Feb. 17, 1999, at 2.

12. In this regard, CCL and Severn also contend: "Whether any party should properly be awarded the contracts is a question of fact, which requires discovery and, therefore, may not be properly decided on a motion for judgment on the pleadings." CCL & PCC's Br. filed Jan. 19, 1999, at 6. This argument ignores the discretion due the administrative agency. Although the court may enter an order barring the award of a contract, or performance under an awarded contract, to any offeror other than the protestor, if it is demonstrably clear which entity is the proper

awardee, such a situation is not present. This fact is most salient when viewed in light of the contentious assertions of each counsel regarding the other parties' respective abilities to perform under the contract.

13. The TRW/BDM contract with DITCO was one of the prime contracts that the procurement at issue was intended to replace. In a Status Report filed on December 8, 1998, plaintiffs raised an issue with regard to TRW/BDM's subcontracting agreement with CHE. Plaintiffs contend that termination of the contracts would not moot the matter before the court because DISA was perpetuating its illegal conduct through the subcontract arrangement between TRW/BDM and CHE. This subcontract provided another impediment to settlement.

On March 1, 1999, plaintiffs replied to the arguments raised by defendant and CHE regarding summary judgment. Plaintiffs acknowledged that "DISA ... terminated the contract awards to CHE and announced its intention to conduct a new procurement rather than make an award to any other party." Plfs' Br. filed Mar. 1, 1999, at 3. Plaintiffs continue that

> [t]he recent decision by DISA to finally cancel the Solicitation is further proof that the agency's actions in evaluating proposals and awarding the contracts were not justified.... Thus, Plaintiffs assume, absent evidence to the contrary, that the cancellation reflects the Government's opinion as a result of this litigation that the original awards to CHE cannot now be justified and that a new solicitation is required to permit the Government to meet its actual needs for DMC maintenance.

*Id.* at 4–5.

Having recognized, for purposes of discovery, a facial violation of the procurement the court must now determine whether plaintiffs' challenge to the award to CHE survives DISA's cancellation of the solicitation, thereby permitting the court to assess the merits. Although amending their complaints to request specifically bid preparation and proposal costs, plaintiffs have not moved to amend their complaints to contest the cancellation of the solicitation.

## DISCUSSION

### 1. *Jurisdiction*

Jurisdictional statutes are to be construed narrowly and " 'with precision and with fidelity to the terms by which Congress has expressed its wishes.' " *Bailey v. West*, 160 F.3d 1360, 1363 (Fed.Cir.1998) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)); *see Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed.Cir.1992) (stating jurisdictional statutes are to be limited strictly to subjects contained within statutory mandate). Ambiguities with regard to jurisdiction should be "resolved against the assumption of jurisdiction." *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed.Cir.

1994). Although jurisdiction may be broadened through legislation, the "waiver of immunity and creation of jurisdiction must be qualified by any conditions that Congress has placed on them." *Bailey*, 160 F.3d at 1363; *see, e.g., SMS Data Prods., Group, Inc. v. United States*, 853 F.2d 1547, 1555 n. * (Fed. Cir.1988) (discussing amendments which expanded jurisdiction). Only through an express waiver of sovereign immunity will the Government be subject to claims against it. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541 (Fed.Cir.1996); *Anderson Columbia Environmental, Inc. v. United States*, 42 Fed.Cl. 880, 885 (1999) (noting intervention of non-interested parties would violate "principle that waivers of immunity must be narrowly construed"); *Connolly v. United States*, 1 Cl.Ct. 312, 314, 554 F.Supp. 1250, 1252 (1982), *aff'd in part, rev'd in part*, 716 F.2d 882 (Fed.Cir.1983) (indicating that because "this is a court of very limited jurisdiction ... the court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization ... but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed") (citations omitted). Because the court's jurisdiction is strictly construed, the court is obliged to assure itself that jurisdiction is proper.

Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). Jurisdiction in the Court of Federal Claims is prescribed by the Tucker Act, 28 U.S.C.A. § 1491 (West 1994 & Supp. 1998), which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or

upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1).

While conferring jurisdiction, the Tucker Act does not create a substantive right enforceable against the United States for monetary damages. *See Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349; *Testan*, 424 U.S. at 398, 96 S.Ct. 948. Thus, a plaintiff must found its claim on a separate statute or regulation permitting recovery. *See Testan*, 424 U.S. at 398–401, 96 S.Ct. 948. If plaintiff is unable to establish jurisdiction, the court is required to dismiss the complaint. *See Ramcor Servs. Group, Inc. v. United States*, 41 Fed.Cl. 264, 267 (1998), *appeal pending*, No. 98–5147 (Fed.Cir. Aug. 4, 1998); *Sharman Co. v. United States*, 30 Fed.Cl. 231, 234, *aff'd*, 41 F.3d 1520 (Fed.Cir.1994).

Defendant has moved for judgment on the pleadings under RCFC 12(c), which provides:

> After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In analyzing a motion for judgment on the pleadings, all facts are assumed true and viewed in the light most favorable to plaintiff. *See Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (noting all allegations should be construed in plaintiff's favor); *Reynolds*, 846 F.2d at 747 (assuming facts of complaint to be true when deciding motion to dismiss). "A motion for judgment on the pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Branning v. United States*, 215 Ct.Cl. 949, 950–51, 1977 WL 9606 (1977); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("If these facts reveal any possible basis on which the nonmovant might prevail, the motion must be denied."). Plaintiff must present more than conclusory allegations without any factual support to withstand the motion.

Jurisdiction over bid protest actions originated from a theory of breach of " 'an implied contract to have the involved bids fairly and honestly considered.' " *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1573 (Fed. Cir.1983) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir. 1983)); *see E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (Fed.Cir.1996); *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 909 (Fed.Cir.1988); *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir.1983). Breach of this implied contract occurs when the government agency acts in an arbitrary and capricious manner when evaluating the bid, *i.e.*, the agency's decision is irrational or unreasonable, or not in accordance with the law. *See NKF Eng'g, Inc. v. United States*, 805 F.2d 372, 376 (Fed.Cir.1986); *Stapp Towing, Inc. v. United States*, 34 Fed.Cl. 300, 305 (1995). Legislation superseded this fiction. *See Ramcor Servs.*, 41 Fed.Cl. at 268. Since enactment of the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320 § 12, 110 Stat. 3870, 3874–75 (the "ADRA"), the Court of Federal Claims and the federal district courts have concurrent jurisdiction to render judgment on a challenge, by an interested party, to "the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C.A. § 1491(b)(1). The ADRA amendments permit the court to consider such a challenge irrespective of whether the agency has awarded the contract.

*2. Review of procurement decision*

▪ Review of an administrative decision is limited and must adhere to the standards established by the Administrative Pro-

cedure Act, 5 U.S.C. § 706 (1994) (the "APA"). *See* 28 U.S.C.A. § 1491(b)(4); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). *See generally Scanwell Lab., Inc. v. Shaffer*, 424 F.2d 859, 865–73 (D.C.Cir.1970) (discussing application of APA). The court is not permitted to substitute its judgment for that of the agency, particularly if there is a reasonable basis for the agency determination; however, the agency will not be permitted to act illegally. *See Scanwell Lab.*, 424 F.2d at 869, 874–75; *GraphicData*, 37 Fed. Cl. at 782 (noting that agency's decision, though entitled to deference, may be overturned); *Stapp Towing*, 34 Fed.Cl. at 306 (finding court should not substitute its judgment if agency determination is reasonable). The court may "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] … without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D); *see GraphicData*, 37 Fed. Cl. at 779–80; *see also NKF Eng'g*, 805 F.2d at 376 (stating interference with procurement process is permissible " 'only in extremely limited circumstances' ") (citation omitted).

■ Selection of a contractor among the protestors and award of the contract are improper exercises of the court's authority. *See Scanwell Lab.*, 424 F.2d at 869; *see also Durable Metals Prods., Inc. v. United States*, 27 Fed.Cl. 472, 476–77 ("Moreover, the equitable jurisdiction of this court does not include the authority to award a contract as plaintiff requests."), *aff'd*, 11 F.3d 1071 (Fed. Cir.1993) (Table). "It is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties." *Scanwell Lab.*, 424 F.2d. at 869; *see Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1152–53 (Fed.Cir.1994). Nonetheless, "[i]t is also incontestible that that discretion may not be abused." *Scanwell Lab.*, 424 F.2d at 869. "While a disappointed bidder does not have the right to have a federal court substitute its judgment for that of the administrative agency, the bidder does have the right to introduce appropriate evidence to allow the court to determine whether the agency action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *GraphicData*, 37 Fed.Cl. at 780 (quoting 5 U.S.C. § 706); *see Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–02 (1977) ("Any analysis of a question of Governmental bad faith must begin with the presumption that public officials act 'conscientiously in the discharge of their duties' … and it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing.' ") (citations omitted).

Plaintiffs properly have invoked jurisdiction to consider their challenge to DISA's award of the subject contracts to CHE. That the court has jurisdiction is of no material consequence, however, if DISA's actions in canceling the solicitation render plaintiffs' challenge to these awards moot.

### 3. Mootness

"The mootness doctrine originates from the 'case or controversy' requirement of Article III of the United States Constitution." *Northrop Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed.Cl. 795, 800 n. 4 (1993) (discussing mootness doctrine and its application by Court of Federal Claims). Federal courts are permitted only to entertain matters in which there is a "live" justiciable issue. *See NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed.Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1029, 143 L.Ed.2d 39 (1999); *Laningham v. United States*, 30 Fed.Cl. 296, 309 (1994), *appeal dismissed*, 52 F.3d 344 (1995) (Table); *see also Intrepid v. Pollock*, 907 F.2d 1125, 1131 (Fed.Cir.1990) (discussing what constitutes "controversy").

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." But jurisdiction, properly ac-

quired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur, and,

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

The burden of demonstrating mootness "is a heavy one."

*County of Los Angeles v. Davis,* 440 U.S. 625, 631, 634, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citations omitted) (ordering case dismissed as moot because "the controversy has become moot during the pendency of this litigation"). Voluntary cessation of illegal conduct does not necessarily result in mootness, unless it is absolutely clear that the allegedly improper behavior will not reasonably recur. *See Secretary of Labor, U.S. Dep't of Labor v. Burger King Corp.,* 955 F.2d 681, 684 (11th Cir.1992) (noting that due to possibility of recurrence, test for mootness is stringent); *see also DeFunis v. Odegaard,* 416 U.S. 312, 318–19, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (discussing voluntary cessation, but finding case moot due to plaintiff's completion of law school); *Resident Council of Allen Parkway Vill. v. HUD,* 980 F.2d 1043, 1048 (5th Cir.1993) (finding that, because behavior could recur, matter not moot). "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Med. Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

While defendant asserts that the termination for convenience and cancellation of the solicitation rendered moot any remaining issues in this case, plaintiffs rejoin that defendant is not empowered to determine the relief to which plaintiffs are entitled and that the relief fashioned is insufficient to cure the harm incurred due to the Government's failure to fairly and honestly consider plaintiffs' proposals. Plaintiffs also argue that the court retains jurisdiction to consider the award of bid preparation and proposal costs, in spite of DISA's actions.[14] Consequently, the court must assess whether a justiciable issue survives DISA's cancellation of the solicitation.[15]

Although contested in all prior pleadings, plaintiffs concede in their brief filed March 1, 1999, that the solicitation regarding the contracts at issue in this case was canceled. *See* Plfs' Br. filed Mar. 1, 1999, at 4. Both plaintiffs and intervenors received written notices dated February 11, 1999, stating: "As a result of the termination for convenience, the agency cannot and will not reaward the above referenced contracts nor will we reinstate CHE as the contractor under the RFP. The agency intends to solicit its Level I hardware maintenance requirements via new solicitation(s)."

■ Plaintiffs correctly contend that a case may not be moot "if other consequences of defendant's actions remain." *NEC Corp.,* 151 F.3d at 1369 ("Because the trial court could still fashion a useful remedy in this case by granting prospective relief from the effects of the antidumping order, the case is not moot."); *see Pacificorp Capital, Inc. v. United States,* 852 F.2d 549, 550 (Fed.Cir. 1988) ("Regardless of whether the procurement has already been completed, [40 U.S.C. § 759(f)(5)(C)] expressly permits the [General Services Board of Contract Appeals] to grant a successful protester an award of protest and bid preparation costs. The availability of such relief is enough to maintain this as a 'live' controversy."). "Mootness of an action relates to the basic dispute between

---

**14.** By order dated January 21, 1999, the court granted CCL's motion to amend its First Amended Complaint, filed August 20, 1998, to include explicitly a request for bid preparation and proposal costs pursuant to 28 U.S.C.A. § 1491(b)(2). The court allowed similar amendments by PCC and Severn by orders dated February 23, 1999. All three motions were granted as unopposed.

**15.** CHE has not challenged the Government's decision to terminate the contracts for convenience.

the parties, not merely the relief requested. Thus, although subsequent acts may moot a request for particular relief or a count, the constitutional requirement of a case or controversy may be supplied by the availability of other relief." *Intrepid,* 907 F.2d at 1131 (holding government's action obviating need for injunctive relief did not moot entire matter because plaintiff moved to amend complaint to challenge scope of antidumping duty order).

 In addition to seeking declaratory and injunctive relief, which is definitively moot in light of the cancellation of the contracts, *see Durable Metals,* 27 Fed.Cl. at 477, plaintiffs seek bid preparation and proposal costs pursuant to 28 U.S.C.A. § 1491(b)(2). The award of bid preparation and proposal costs is within the court's power upon a finding of unreasonable action by the procuring agency. In *PRC, Inc. v. Widnall,* 64 F.3d 644 (Fed.Cir.1995), the Federal Circuit held that "a prerequisite for an award of protest and proposal costs is a 'determination' by the Board 'that a challenged agency action violate[d] a statute or regulation or the conditions of any delegation of procurement authority.'" *Id.* at 647 (quoting 40 U.S.C. § 759(f)(5)(B)-(C)). Although vacating the board's decision regarding the underlying protest, the Federal Circuit ruled that plaintiff could base its claim for protest and proposal costs on this underlying determination. *See id.* Pursuant to 40 U.S.C. § 759(f)(5)(B)-(C), a board of contract appeals was expressly authorized to award such costs upon finding a violation.[16] Similar wording is absent in this court's statutory mandate. *See* 28 U.S.C.A. § 1491(b)(1)-(2). Notwithstanding an explicit statement, the court concludes logically that a decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relief.

 The underlying issue is whether the award to CHE must be overturned. The cancellation of the solicitation prevents the *reinstatement of any award to CHE* under the original solicitation, so the dispute over

the award is resolved and will not reoccur. Cancellation of the solicitation also moots any question regarding the propriety of the award to CHE. In light of DISA's decision to cancel the solicitation, any decision on the merits of the award would not affect plaintiffs in any respect—none of the plaintiffs will be eligible for award, as no award can be made under a canceled solicitation. The mere fact that plaintiffs may have been entitled to more relief than they received had there been a decision on the merits is insufficient to permit continued litigation in light of DISA's actions, which have rendered the underlying issue moot. Plaintiffs' amended complaints present two questions: (1) whether error occurred in the procurement process, and (2) whether plaintiffs are entitled to bid preparation and proposal costs. Having negated any impropriety by canceling the award and the solicitation, DISA has precluded the court from making a finding regarding the first question. Significantly, without reaching the merits of the first question, analysis with regard to the second cannot proceed.

The court is aware of the potential harm to plaintiffs in permitting the Government the opportunity to avoid litigation by canceling the solicitation upon protest. *See California Marine Cleaning, Inc. v. United States,* 42 Fed.Cl. 281, 296 (1998) (noting desire to avoid protracted litigation is insufficient to justify cancellation of solicitation). Although the Government should be allowed to take corrective action to resolve disputes regarding a procurement in an efficient manner, the Government is not entitled to avoid liability by merely canceling a solicitation flawed inherently or in its execution.

The Government is obligated to consider bids in an honest and fair manner and to adhere to the statutes and regulations governing the procurement. It is in the interests of all parties to conduct a procurement in accordance with the guidelines established by the solicitation because the failure to do so will increase costs on both sides—for plaintiffs in protesting an award and/or submitting a proposal pursuant to a new solicitation and for the Government in continuing to

---

16. 40 U.S.C. § 759 was repealed in 1996. *See* 40 U.S.C. § 759 (Supp. II 1996).

retain the contractors currently performing and/or processing a new solicitation. Although preparation and proposal costs generally constitute the cost of doing business with the Government, *see E.W. Bliss Co. v. United States,* 77 F.3d at 447 (" 'Proposal preparation expenses are a cost of doing business that normally are "lost" when the effort to obtain the contract does not bear fruit.' ") (quoting *Lincoln Servs., Ltd. v. United States,* 230 Ct.Cl. 416, 417, 678 F.2d 157, 158 (1982)); *Federal Data Corp. v. United States,* 911 F.2d 699, 705 n. 4 (Fed.Cir.1990) ("Congress has implicitly recognized that [bid preparation costs] are generally costs of doing business to be borne by the bidders rather than by the government"); *Durable Metals,* 27 Fed.Cl. at 479 ("Plaintiff bears the risk that, as a result of the procurement process, no award may be made at all."), the court's statutory mandate permits the award of such costs when agency conduct is found to be arbitrary or capricious and prejudicial. *See Central Arkansas Maintenance, Inc. v. United States,* 68 F.3d 1338, 1342 (Fed.Cir. 1995) ("However, not all violations of statute and regulation are the same; only a 'clear and prejudicial' violation of a procurement statute or regulation warrants relief.") (citation omitted).

Contesting DISA's decision to cancel the solicitation could well have been such a circumstance, given that nothing appears to have been wrong with the solicitation itself, and defendant has provided no reason for its cancellation other than the termination for convenience. *See American Gen. Leasing, Inc. v. United States,* 218 Ct.Cl. 367, 374–75, 587 F.2d 54, 58–59 (1978) (assessing plaintiffs challenge to cancellation of solicitation and denying plaintiff's request for bid preparation and proposal costs upon finding cancellation valid); *California Marine,* 42 Fed.Cl. at 292–96 (finding contracting officer's justification for cancellation of solicitation lacked rational basis); *126 Northpoint Plaza Ltd. Partnership v. United States,* 34 Fed.Cl. 105, 109–12, *appeal dismissed,* 73 F.3d 379 (1995) (Table) (granting relief to bidder which challenged cancellation and resolicitation because no reasonable basis for decision to cancel); *Aviation Enters., Inc. v. United States,* 8 Cl.Ct. 1, 15–16 (1985) (stating that establish-

ment of solicitation cancellation as improper requires demonstration that no rational or reasonable basis underlay decision); *see also R.R. Donnelley & Sons, Co. v. United States,* 40 Fed.Cl. 277, 284–85 (1998) (considering plaintiff's challenge to cancellation of invitation for bids for which plaintiff may be entitled to bid preparation costs, concluding that contracting officer had reasonable basis for cancellation); *Durable Metals,* 27 Fed.Cl. at 478–79 (finding failure to challenge solicitation fatal and, further, declining to award bid preparation and proposal costs upon finding that contracting officer's decision was sound); *Kinetic Structures Corp. v. United States,* 6 Cl.Ct. 387, 396–400 (1984) (denying plaintiff's request for bid preparation and proposal costs in connection with canceled solicitation because cancellation was reasonable and procedural violation insignificant). *See generally Powell v. McCormack,* 395 U.S. 486, 496–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (holding mootness claim for injunctive relief did not moot entire matter because claim for back salary not resolved); *DPSC Software, Inc. v. Dep't of the Treasury,* 93–3 BCA ¶ 26,052, at 129,507, 1993 WL 121767 (holding protest by unsuccessful bidder to propriety of evaluation and award not moot as prior dismissals were without prejudice to another challenge under same procurement); *Electronic Sys. & Assocs., Inc. v. Dep't of the Navy,* 92–1 BCA ¶ 24,733, at 123,436, 1992 WL 6084 (finding oral continuation of contract to be "semantic game" that did not eradicate effects of initial violation and, therefore, protest not moot).

This case has evolved in a peculiar manner. Plaintiffs have had approximately two months to move to amend their complaints to challenge DISA's express cancellation of the solicitation as announced in its February 11, 1999 letters. Although having so moved with regard to bid preparation and proposal costs, plaintiffs have neglected to do so with regard to the cancellation. Indeed, in their motion for partial summary judgment plaintiffs appear to assume that the cancellation was proper. The absence of a contest to the cancellation of the solicitation is a bar to resolving a critical issue on the merits. Because a decision on the merits is a prerequi-

site to an award of bid preparation and proposal costs under the Federal Circuit's ruling in *PRC,* the court is unable to grant any further relief. *See United States v. Julie Research Lab., Inc.,* 881 F.2d 1067, 1068 (Fed.Cir.1989) (" '[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' Courts are 'not empowered to decide moot questions ... or to declare ... principles or rules of law which cannot affect the result as to the thing in issue in the case before them.' ") (citations omitted).

With regard to plaintiffs' contentions that the matter is not moot because DISA is perpetuating its improper conduct through the subcontract between CHE and TRW/BDM to perform the same maintenance work, plaintiffs are correct that DISA may not seek to achieve the same end through a different means and avoid a challenge. Nevertheless, plaintiffs have failed to raise a credible issue demonstrating that DISA was involved in the subcontracting selection of CHE by TRW/BDM to perform the work in question. Although frequently employed by these plaintiffs, speculation is insufficient to perpetuate this prolonged matter. *See generally Durable Metals,* 27 Fed.Cl. at 479 ("Speculation simply does not support an award of bid preparation costs nor does it quell a motion for summary judgment.") (citations omitted).

### 4. Partial summary judgment

■ In their motion for partial summary judgment, plaintiffs contend that DISA's termination of the subject contracts and unwillingness to defend its award to CHE constitutes an admission that its award to CHE was improper. Given this admission, plaintiffs maintain that the court should award summary judgment in their favor. Defendant counters that plaintiffs' motion is baseless, and posits that "if the Court were to accept this argument the Government would be forced into a position of never taking appropriate corrective action in bid protest cases as it would be the functional equivalent of confessing [judgment]." Def's Br. filed Feb. 17, 1999, at 11. Asserting that summary judgment is inappropriate due to a myriad of questions of fact, defendant reiterates "that any gaps in the evaluation were 'harmless.' " *Id.* at 11 (citation omitted). Moreover, defendant argues that plaintiffs' motion should be denied because plaintiffs failed to demonstrate bad faith or that the decision was arbitrary and capricious.

Although plaintiffs contend correctly that defendant has chosen not to defend the award to CHE, this fact alone, without more, does not constitute an admission of improper conduct. Throughout these proceedings defendant has maintained that any missing documentation was harmless error and that the award of these contracts was made in good faith after careful consideration of all submitted proposals. Plaintiffs have not argued that defendant has acted in bad faith. Instead, plaintiffs' arguments have focused on the evaluation process and the lack of documentation from the TERP members. Plaintiffs have placed defendant in the difficult position of proving a negative. Defendant has chosen to abandon the contract awards and resolicit, rather than attempt to refute plaintiffs' charges.

DISA's actions do not constitute an admission of impropriety. Nor, as the record reflects, has the court made any finding to that effect. *See CCL Serv.,* Nos. 98–664C & 98–692C (Fed.Cl. Oct. 7, 1998) (order permitting limited discovery); *see also GraphicData,* 37 Fed.Cl. at 780 (permitting supplementation of administrative record to ascertain whether GPO violated procurement regulations). Although the absence of documentation in the record was sufficient to support the need for discovery, its absence does not portend a finding of improper conduct. Defendant explained repeatedly that the TERP evaluators met over the course of a weekend at which time summary evaluation sheets were prepared and signed by the evaluators. The failure to complete individual evaluation sheets, as required, may have been negligent, but the evidence to date has suggested nothing more. Viewing the evidence in the light most favorable to defendant, plaintiffs failed to demonstrate entitlement to judgment as a matter of law. *See* RCFC 56(c). Moreover, defendant's actions have rendered moot any further proceedings in this matter. Conse-

quently, summary judgment would be inappropriate.[17]

## CONCLUSION

Defendant's actions have rendered moot the proposal evaluations, contract awards, and questions regarding propriety. Plaintiffs have not asserted a challenge to cancellation of the solicitation, and thus no remaining issue is before the court. Because no issue is before the court for resolution, the court is without the power to grant plaintiffs any further relief, and plaintiffs' requests for bid preparation costs are dismissed as moot. Accordingly, based on the foregoing:

1. Plaintiffs' motion for partial summary judgment is denied.

2. Defendant's motion for judgment on the pleadings, treated as a motion for summary judgment, is granted. The Clerk of the Court shall dismiss the amended complaints as moot.

3. By May 10, 1999, the parties shall file requests for deletion of protected/privileged material before the court issues its published opinion.

**IT IS SO ORDERED.**

---

**17.** With regard to plaintiffs' contentions that the court should remand this matter to the agency for further action due to the insufficiencies of the administrative record, the court points out that the cancellation of the solicitation renders any action under this solicitation a nullity. Even though questions of fact surround which entity should have been the proper awardee, no contract may be awarded under this solicitation, so a remand to the contracting agency would be pointless. Moreover, even if remand would be appropriate upon a finding of illegal action by the agency in canceling the award, the court has made no findings on the merits, and plaintiffs have not sought to invalidate the cancellation.