**S.K.J. & ASSOCIATES, INC., and Joseph M. Jankite, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 04–1135 C.

United States Court of Federal Claims.

Aug. 11, 2005.

Susan K. Jankite, Susan Jankite Co., L.P.A., Lakewood, Ohio, for plaintiffs.

William K. Olivier, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant, along with Peter D. Keisler, Assistant Attorney General, James M. Kinsella, Deputy Director, and David M. Cohen, Director. Mogbeyi E. Omatete, Office of General Counsel, United States Department of Health and Human Services, of counsel.

## OPINION

BUSH, Judge.

This opinion is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). For the reasons set forth herein, defendant's motion to dismiss is granted.

## BACKGROUND

### I.  Factual Background

The following facts are undisputed unless otherwise indicated. S.K.J. & Associates, Inc. (SKJ) is an Ohio corporation. Plaintiff Joseph M. Jankite is a service-disabled veteran of the United States Air Force and, according to plaintiffs, is president of SKJ. On August 28, 2002, defendant, through the Department of Health and Human Services (HHS) issued Request for Quotations No. 02M000077 (RFQ); a procurement to provide community-based counseling services to people with serious mental illness and who are homeless or at imminent risk of homelessness. The services were to be provided through funding by the Substance Abuse and Mental Health Services Administration (SAMHSA) under the Projects for Assistance in the Transition from Homelessness program (PATH). One of the services provided to these individuals is assistance in obtaining social security income and social security disability income benefits for which they are eligible.

HHS received three quotations in response to the RFQ. SKJ prepared and submitted the lowest quoted bid at $83,620, but on September 24, 2002, the contract was awarded to a higher bidder, Policy Research Associates (Policy Research), which quoted a bid of $99,501 (the next lowest bid). The project officer determined that SKJ's quotation was "unresponsive" and that Policy Research was entitled to the award based on a "technically sound" quotation. Compl. Ex. 3 at p. 3.

SJK alleges that it "did not independently learn of the award [to Policy Research] until approximately three weeks after the award, on or about October 11, 2002," the date that SKJ was provided a debriefing by the government.[1] Compl. ¶¶ 15–16. Conversely, defendant claims that SKJ was orally informed of the contract award during an October 7, 2002 telephone conversation. Regardless, SKJ challenged the rejection of its quotation and filed a bid protest with the United States Government Accountability Office (GAO), formerly the United States General Accounting Office, on October 14, 2002, claiming that because the RFQ only provided for the consideration of price and price-related factors in the award selection, its quotation was not unresponsive. SKJ argued that the solicitation failed to mention how technical proposals would be rated and that SKJ's proposal had included the required detailed work plan. Because the protest precipitated an automatic stay in accordance with the Competition in Contracting Act (CICA), 31 U.S.C. § 3551 *et seq.* (2000), on October 22, 2002, the cognizant official within HHS approved continued performance under the contract pursuant to 31 U.S.C.

---

1. In the complaint, plaintiffs allege that they learned of the award on October 11, 2003. The court deems this to be simply a misprint on plaintiffs' part and that plaintiffs mean the date to be stated as October 11, 2002.

§ 3553(d)(3)(C), thereby overriding the automatic stay.

GAO found that there were defects in the RFQ, and in particular, that HHS failed to provide vendors with any guidance as to the content requested in technical proposals or the basis for evaluating such content, and that HHS failed to reasonably evaluate the SKJ quotation under the terms of the RFQ. The protest successfully challenged the contract award and was sustained on January 13, 2003. GAO recommended that HHS amend the RFQ to state the desired content of the offerors' proposals as well as the criteria to be applied in evaluating them and selecting a winner. GAO also recommended, *inter alia*, that SKJ be reimbursed "the reasonable costs of filing and pursuing the protest, including attorneys' fees." Compl. Ex. 3 at p. 6 (citing 4 C.F.R. § 21.8(d)(1) (2002)). The protester was required to submit a "certified claim for such costs detailing the time expended and the costs incurred, directly to the contracting agency within 60 days after the receipt" of GAO's January 13, 2003 decision. *Id.*

On January 17, 2003, the agency terminated for convenience Purchase Order No. 02M00007701D, which had been awarded under RFQ 02M000077 to Policy Research.[2] In compliance with GAO's recommendation, heretofore missing evaluation criteria was included in an amended solicitation and RFQ No. 03M000101 was published and sent to SKJ and Policy Research on March 7, 2003. New proposals were received and evaluated for both SKJ and Policy Research. After evaluation of the proposals, Purchase Order No. 03M00010101D was awarded to Policy Research on June 18, 2003.

On March 5, 2003, SKJ submitted its claim for $22,851.44 to the contracting officer for costs in pursuing the protest. According to

defendant, the claim did not include either a claim or an amount for bid preparation costs. The government further states that SKJ did not present a claim for bid preparation costs to the contracting officer prior to filing the complaint.[3] Subsequently, on April 23, 2003, SKJ responded to GAO with a revised claim for bid protest costs and legal fees in the amount of $28,301.92.[4] On July 24, 2003, GAO issued its recommended decision on SKJ's request for bid protest costs and attorneys' fees. In that determination, GAO recommended even less than the agency had offered SKJ to settle its claim for expenses. Instead of the $8,913.85 offered by HHS, GAO found that SKJ had demonstrated entitlement to only $2,643.35 as the amount plaintiffs should be reimbursed for bid protest costs and attorneys' fees. Plaintiffs state that both of these offers were unsatisfactory. Accordingly, on July 8, 2004, plaintiffs initiated the current action, claiming that defendant, through HHS, is liable to SKJ for the bid preparation and protest costs for the January 13, 2003 protest.

## II. Procedural Background

Plaintiffs initiated this action on July 8, 2004, within one year of the July 24, 2003 GAO decision. In Count I of the complaint, plaintiffs state that HHS failed to follow federal regulations in its bid evaluation and award procedures for the initial procurement under 15 U.S.C. § 637(b)(7) (2000) and Federal Acquisition Regulation (FAR) 19.602–1(a) (codified at 48 C.F.R. § 19.602–1(a) (2004)). Plaintiffs state that SKJ submitted the lowest bid but that HHS made the decision to award the bid to another bidder "absent any rational and reasonable basis" and that HHS failed to follow its own bid guidelines by "labeling the [SKJ] proposal as unresponsive, and awarding the contract to an-

---

2. Plaintiffs claim that they did not learn that HHS terminated the purchase order until February 16, 2003. Plaintiffs state that three days later, on February 19, 2003, they filed a second protest on the basis that the agency continued performance under the contract; plaintiffs also state that this second protest was not sustained.

3. The agency offered to settle SKJ's claim for bid protest costs and attorneys' fees for $8,913.85. SKJ rejected the agency's offer.

4. In its original and revised claim, before GAO, SKJ sought costs for "pursuing protest debriefing," "pursuing claim," and, *inter alia*, "legal fees pursuing claim." Compl. Exs. 4, 5. Apparently, SKJ did not seek bid preparation or bid proposal costs from GAO since nothing in the record before the court reflects that plaintiffs asked GAO for the award of any costs other than its bid protest costs and legal fees.

other bidder ... that submitted a bid in an amount higher than [SKJ]'s bid." Compl. ¶¶ 22–23. Because of these transgressions, plaintiffs maintain that defendant "essentially made a non-responsibility determination and the awarding agency should have referred the matter to the Small Business Administration [ (SBA) ] for review under [the] Certificate of Competency program." *Id.* ¶ 24. According to plaintiffs, due to defendant's "error in the procurement process, bias, and bad faith," with respect to the first procurement process, plaintiffs were "prejudiced and financially damaged" by the denial of the award, rendering plaintiffs "entitled to bid preparation costs in addition to protest costs." *Id.* ¶ 25.

In Count II of the complaint, plaintiffs allege that when SKJ was wrongfully denied the award of the contract by HHS, SKJ then filed a bid protest which plaintiffs state was properly sustained by GAO. In accordance with GAO's recommended decision on the merits, after termination of the contract, the RFQ was amended by HHS and republished. SKJ states that it then submitted another quote which was again rejected by HHS and the contract was ultimately awarded again to Policy Research.[5] SKJ states that it filed a timely request for the cost of filing and pursuing the bid protest, however the "United States of America, by and through the United States General Accounting Office presented a settlement amount that was insufficient in its amount and contrary to what costs are allowed to be compensated." *Id.* ¶ 30. SKJ goes on to assert that GAO "has failed to act in good faith and follow established federal regulations guidelines and case law precedent in its unacceptable and unconscionable offers made to [SKJ]." *Id.* ¶ 32. Accordingly, SKJ seeks damages in the amount in of $30,000.00, "to include the Plaintiff's bid preparation costs, the Plaintiff's protest costs, attorney's fees, costs of this action, and all other relief that is equitable and just." *Id.* at p. 7.

Defendant filed its answer on October 6, 2004 and its Motion to Dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1) on February 24, 2005. Plaintiffs filed their Reply to Defendant's Motion to Dismiss (hereinafter cited as Pls.' Resp. to Def.'s Mot. to Dismiss) on March 14, 2005 and, on March 28, 2005, defendant filed its Reply to Plaintiffs' Response to Defendant's Motion to Dismiss. On July 20, 2005, the court ordered the parties to file supplemental briefs, which were filed by the parties on August 1, 2005, as to the procurement history of the award and also as to whether the doctrine of mootness applies to bar plaintiffs' claim for bid preparation and proposal costs. *See* discussion *infra* Section II.B.

## DISCUSSION

### I. Standard of Review

Defendant moves this court to dismiss plaintiffs' claims under RCFC 12(b)(1) for lack of subject matter jurisdiction. With respect to plaintiffs' request for bid protest costs, defendant argues that this court lacks the requisite subject matter jurisdiction to award bid protest costs. With respect to plaintiffs' claim for bid preparation costs, defendant argues that plaintiffs cannot recover bid preparation costs because SKJ failed to present a claim for bid preparation costs to the contracting officer or to GAO before filing suit in this court.

"Jurisdiction" is the power or authority of a court to "hear and decide a case." *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687–88 (Fed.Cir.1992). RCFC 12(b)(1) allows for dismissal of a claim for "lack of jurisdiction over the subject matter." RCFC 12(b)(1). This court's subject matter jurisdiction is strictly construed. *See Taylor v. United States*, 49 Fed.Cl. 598, 601–02 (2001) (citations omitted), *aff'd*, 303 F.3d 1357 (Fed.Cir. 2002). The nonmoving party bears the bur-

5. In this section of the complaint, plaintiffs refer to the awardee as "Policy Resources." The court presumes that plaintiffs meant "Policy Research" although this fact is not relevant to any material matter at issue. The court further notes that SKJ claims that HHS's second decision to award to Policy Research also lacked a rational and rea-

sonable basis. However, while SKJ asserts that the agency's rejection of SKJ's second bid and its subsequent award to Policy Research also lacked a rational and reasonable basis, plaintiffs do not challenge that second determination by the agency in its complaint before this court.

den of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) (citations omitted); *see also McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court will generally consider the facts alleged in the complaint to be true and correct. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *CW Gov't Travel, Inc. v. United States,* 46 Fed.Cl. 554, 556 (2000). If, however, jurisdictional facts are in dispute, then a court may consider relevant evidence in order to resolve the factual dispute. *Reynolds,* 846 F.2d at 747 (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Zunamon v. Brown,* 418 F.2d 883, 886 (8th Cir.1969)). If the motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute, *see Reynolds,* 846 F.2d at 747 (citations omitted), including facts beyond the complaint to determine jurisdictional facts. *See Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009.

The Tucker Act is the primary statute which confers jurisdiction on this court. *See* 28 U.S.C. § 1491 (2000). The Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*Id.* § 1491(a)(1). It is well established that the Tucker Act is purely jurisdictional and does not create any substantive rights against the United States for money damages; rather, it merely confers jurisdiction on the Court of Federal Claims whenever the substantive right exists. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The substantive right "must be found in some other source of law,

such as 'the Constitution, or any Act of Congress or any regulation of an executive department.'" *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting 28 U.S.C. § 1491(a)(1)).

In *Moden v. United States,* the United States Court of Appeals for the Federal Circuit (Federal Circuit) re-clarified the appropriate inquiries that a court must make in response to a motion to dismiss for lack of subject matter jurisdiction, a motion to dismiss for failure to state a claim upon which relief can be granted, and a motion for summary judgment. 404 F.3d 1335, 1340 (Fed. Cir.2005). In citing *Spruill,* 978 F.2d at 687–88, the *Moden* court noted the following with respect to determining subject matter jurisdiction:

> In *Spruill* we concluded that subject matter jurisdiction exists when a petitioner asserts a nonfrivolous claim: To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted. The forum has jurisdiction to hear the matter in the first instance—that is, subject matter jurisdiction existed—as long as the petitioner asserted nonfrivolous claims.

*Moden,* 404 F.3d at 1340–41 (citing *Spruill,* 978 F.2d at 687–88). Equally, " '[d]ismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 1341 (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)); *see also Total Medical Mgmt., Inc. v. United States,* 29 Fed.Cl. 296, 299 (1993) ("Challenges to jurisdiction are overcome 'on the basis of well-pleaded allegations in the com-

plaint.'") (citing *Spruill,* 978 F.2d at 686). Well-pled allegations in the complaint are generally all that is required to withstand a Rule 12(b)(1) challenge to jurisdiction. *See Spruill,* 978 F.2d at 686.

Unfortunately, these concepts have not always been kept separate.[6] However, the court in *Janowsky v. United States,* 31 Fed. Cl. 520, 521 (1994) accurately explained:

> By challenging the existence of the properly alleged contract, defendant is attacking the merits of plaintiffs' case, not the court's jurisdiction. By introducing affidavits questioning whether a contract in fact exists, defendant has taken the factual attack approach to RCFC 12(b)(1), abandoning the usual RCFC 12(b)(1) presumption of truth of plaintiffs' allegations. We have broad discretion in dealing with RCFC 12(b)(1) motions when matters outside the pleadings are offered .... [However,] [w]here defendant disputes merit-type issues in a Rule 12(b)(1) motion, we follow the Federal Circuit's guidance in *Spruill* [and] assume jurisdiction and proceed on the merits.

*Id.; see also Morris v. United States,* 33 Fed.Cl. 733, 743 (1995) (stating that to the extent plaintiffs have alleged a justiciable claim, the court should assume jurisdiction and address the merits of plaintiffs' claims).

Thus, in this instance, the court must determine whether plaintiffs have alleged nonfrivolous claims to allow this court to exercise subject matter jurisdiction over plaintiffs' lawsuit. *See Moden,* 404 F.3d at 1341 (stating that "to the extent the Modens have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper").

With respect to bid protest and bid preparation costs, the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, § 12(a)-(b), 110 Stat. 3870, 3874 (1996) (codified as amended at 28 U.S.C. § 1491(b) (2000)), provides the Court of Federal Claims with federal procurement, post-award bid protest jurisdiction for actions filed on or after December 31, 1996. *See* 28 U.S.C. § 1491(b)(1)-(4). In this regard, the Tucker Act specifically states:

> (b)(1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded. (2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to *bid preparation and proposal costs.*

*Id.* § 1491(b)(1)-(2) (emphasis added).[7]

A disappointed bidder on a government contract has a choice of three forums within

---

**6.** In this regard, the Federal Circuit has noted that "[s]ometimes the question of subject matter jurisdiction gets confused with the question of entitlement to relief .... [P]recision requires that the distinction between these two ideas be clearly drawn." *Spruill,* 978 F.2d at 686. "A decision by the forum that the facts as alleged do not fall within its subject matter jurisdiction is properly characterized as a dismissal for want of jurisdiction." *Id.* However, "[a]ssuming that ... jurisdiction has been found to exist on the basis of well-pleaded allegations ... a decision by the forum that the complaint fails to state a claim upon which relief can be granted is a decision on the merits of the pleaded cause." *Id.* "Confusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction." *Id.* at 687. "While the practical result of a dismissal for want of jurisdiction may in some cases be the same, the legal consequences can be substantially different." *Id.* (footnote omitted); *see also Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951) ("[W]here jurisdiction depends on subject matter, the question whether jurisdiction exists [may become] confused with the question [of] whether the complaint states a cause of action.... To determine whether that claim is well founded, the [court] must take jurisdiction.").

**7.** The jurisdiction of the federal district courts over the actions described in 28 U.S.C. § 1491(b) terminated on January 1, 2001 per a legislated

which to file a protest: the procuring agency, this court and GAO. *See* Jerome S. Gabig, Jr., *Fighting Over Government Contracts,* 66 Ala. Law. 39, 40 (2005). GAO may review procurement protests, but such review does not exclude judicial review. *See* 31 U.S.C. § 3556. GAO's protest jurisdiction is defined by CICA. Should a bidder pursue its challenge to the bid award with GAO, GAO's ultimate determination is not binding upon the agency or this court; rather, it serves as a recommendation that becomes a part of the administrative record. *Honeywell, Inc. v. United States,* 870 F.2d 644, 647 (Fed.Cir. 1989); *Chas. H. Tompkins Co. v. United States,* 43 Fed.Cl. 716, 719 (1999). CICA authorizes the Comptroller General to entertain protests by disappointed bidders. In a subsequent judicial action pertaining to the procurement, the Comptroller General's recommendation "shall be considered to be part of the agency record subject to review." 31 U.S.C. § 3556.

In light of the court's bid protest jurisdiction recited above, it is the duty of the court to determine whether plaintiffs' request for bid protest and bid preparation costs fits within this statutory conferral to warrant exercising subject matter jurisdiction over plaintiffs' lawsuit.

## II. Analysis

Plaintiffs seek three categories of costs resulting from their successful bid protest: (1) bid protest costs; (2) bid preparation costs; and (3) attorneys' fees, litigation costs and other relief. The court addresses subject matter jurisdiction over each of the costs sought in turn.

### A. Subject Matter Jurisdiction Over Bid Protest Costs

█ In its motion to dismiss, defendant argues that plaintiffs are precluded from seeking bid protest costs because " '[s]ince 1996 ... a disappointed bidder ... can no longer recover protest costs as part of a successful bid protest action." Def.'s Mot. to Dismiss at 5 (citing *Lion Raisins, Inc. v. United States,* 52 Fed.Cl. 629, 631 (2002)).

sunset provision. *See* Pub.L. No. 104–320, § 12(d), 110 Stat. 3870 (1996); *see also PGBA,*

Plaintiffs counterargue that an implied contract exists between SKJ and defendant and that the government breached this implied contract to treat bidders fairly. In particular, plaintiffs claim that defendant acted in bad faith and that it had no reasonable basis to reject plaintiffs' proposal and violate its own regulations in the evaluation process. Because of this, plaintiffs argue that their claim for bid protest costs falls within this court's jurisdiction.

"Bid and proposal costs" are "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential Government or non-Government contracts." FAR 31.205–18(a) (codified at 48 C.F.R § 31.205–18(a) (2004)). Bid and proposal costs are allowable contract costs so long as they are allocable and reasonable. FAR 31.205–18(c) (codified at 48 C.F.R § 31.205–18(c)). To be awarded bid and proposal costs in a successful bid protest action, the contractor similarly must show those bid and proposal costs to be allocable and reasonable. *Lion Raisins,* 52 Fed.Cl. at 630–31 (citing *Coflexip & Servs., Inc. v. United States,* 961 F.2d 951, 953 (Fed.Cir.1992)). Conversely, expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids. *Finley v. United States,* 31 Fed.Cl. 704, 707 (1994) (citation omitted).

Defendant relies on *Lion Raisins* in support of its argument that plaintiffs are not entitled to bid protest costs. In that case, the United States Department of Agriculture (USDA) issued an invitation for raisin handlers to bid on two government contracts. 52 Fed.Cl. at 630. Upon receipt of plaintiff's bid, USDA requested a certificate of competency (COC) for plaintiff and initiated a size protest against plaintiff with the United States Small Business Administration (SBA). Shortly before the bids were to be awarded, and before SBA determined plaintiff's competency, USDA suspended plaintiff from participating in government contracts for a period of one year. The court found that USDA

*LLC v. United States,* 389 F.3d 1219, 1227 (Fed. Cir.2004).

acted arbitrarily and capriciously in that regard and, accordingly, as authorized by the Tucker Act, 28 U.S.C. § 1491(b)(2), the court awarded bid preparation and proposal costs. *Id.* (citing *Lion Raisins, Inc. v. United States,* 51 Fed.Cl. 238, 251 (2001)).

Lion Raisins claimed over $60,000,000 in bid preparation costs, which included costs in preparing the bid, "as well as its costs incurred in responding to the size protest and the SBA's COC review." *Id.* The court found that plaintiff's bid protest costs were not recoverable because the Tucker Act clearly states that " 'any monetary relief shall be limited to bid preparation and proposal costs.' " *Id.* at 631 (citing 28 U.S.C. § 1491(b)(2)). The *Lion Raisins* court noted that:

A disappointed bidder thus can no longer recover bid protest costs as part of a successful bid protest action. *MVM, Inc. v. United States,* 47 Fed.Cl. 361, 366 (2000) (by "allowing an award of bid proposal costs and injunctive relief and by not authorizing an award of bid protest costs," Congress balanced the need to provide incentives to challenge government errors and the concern for over-penalizing the Government); *CW Gov't Travel, Inc. v. United States,* 46 Fed.Cl. 554, 559 n. 6 (2000).

*Id.* The *Lion Raisins* court also noted that costs "incurred prior to the bid and in response to the SBA requests cannot be characterized as bid protest costs." *Id.* at 632. "Implicit in the definition of bid protest costs is the requirement that the costs be incurred in protest of a contract award to another contractor or in defense of such a protest." *Id.* "Indeed, both cases on which plaintiff relies involved a claim for costs incurred in the filing of post-award, formal protests with a government agency." *Id.* (citations omitted). Therefore, the court noted, in order for Lion Raisins to recover its SBA-related costs, it had to demonstrate that those costs could be properly categorized as bid preparation and proposal costs. *Id.* Plaintiff in *Lion Raisins* relied on *Coflexip,* 961 F.2d at 953, in support of its proposition that a bidder can recover costs incurred pursuant to ongoing, pre– or post-award negotiations with the gov-

ernment as bid proposal costs. However, the *Lion Raisins* court noted that the holding in *Coflexip* only refers to costs incurred during a negotiated procurement. *See* 52 Fed.Cl. at 632 (citing *Coflexip,* 961 F.2d at 953).

In this instance, the majority of the costs plaintiffs seek to recover are bid protest costs, such as "costs associated with filing and pursuing this protest, including but not limited to attorneys' fees to review, consultant and expert witness fees." Compl. Ex. 5 at p. 5. Because the Tucker Act only allows recovery for bid preparation and proposal costs, *see* 28 U.S.C. § 1491(b)(2), this court does not have jurisdiction to entertain plaintiffs' request for bid protest costs.

█ As an alternative to reliance upon the Tucker Act for jurisdiction, plaintiffs look to jurisdiction based upon an implied-in-fact contract to fairly consider bids. The implied-in-fact contract theory upon which plaintiffs rely in support of their request for bid protest costs has been given less and less deference by decisions of this court. This basis of recovery concerns the court's pre-award bid protest jurisdiction when the government issues a solicitation. *CC Distrib., Inc. v. United States,* 38 Fed.Cl. 771, 778 (1997). At that stage, the government has an implied duty to honestly and fairly consider bids and proposals from contractors who invest the time and expense of preparing and submitting a bid or proposal in response to an invitation for bids or a request for proposal. *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1202 (1974). In the past, this implied-in-fact contract theory has served as a basis for recovering costs in bid protest cases. The government breached this contract if its consideration of the bid was arbitrary or capricious. *See id.*

The ADRA, however, amended the Tucker Act to provide this court with express jurisdiction over bid protests. Because of the introduction of 28 U.S.C. § 1491(b)(2), this court agrees with the *Lion Raisins* court that the implied-in-fact contract theory no longer serves as a basis of recovery for bid protest actions. *Lion Raisins,* 52 Fed.Cl. at 631 (citations omitted). Although the Federal Circuit has not specifically prohibited the implied-in-fact contract theory of recovery in

bid protest actions, *see Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1082 n. 9 (Fed.Cir.2001) ("[W]e decline to address whether the implied contract theory survives the ADRA."); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n. 6 (Fed.Cir. 2001) (noting that "we need not decide" whether the implied contract theory survives the 1996 amendments to the Tucker Act), this court has done so in other opinions. *See Block v. United States*, 66 Fed.Cl. 68, 76–77 (2005) ("[T]his court has repeatedly stated that the implied-in-fact contract to fairly consider bids no longer survives as a basis for recovery in actions challenging consideration of a bid or proposal.") (citing *Lion Raisins, Inc. v. United States*, 52 Fed.Cl. 115, 120 (2002)); *Hunt Bldg. Co. v. United States*, 61 Fed.Cl. 243, 273 (2004) ("This Court's bid protest jurisdiction is no longer premised on the theory of the breach of an implied-in-fact contract."); *Ramcor Servs. Group, Inc. v. United States*, 41 Fed.Cl. 264, 268 (1998) ("Prior to the 1996 Tucker Act amendments, the Court of Federal Claims, as well as its predecessor courts, found jurisdiction over procurement disputes by virtue of a fictional implied-in-fact contract requiring the Government to consider an offeror's bid in a fair and honest manner. The 1996 Tucker Act amendments obviate such a requirement.") (citation omitted), *aff'd in part and vacated in part*, 185 F.3d 1286, 1289 (Fed.Cir.1999). Accordingly, plaintiffs' claim for bid protest costs is denied for lack of subject matter jurisdiction.

## B. Subject Matter Jurisdiction Over Bid Preparation and Proposal Costs

■ Defendant argues that this court also lacks jurisdiction over SKJ's bid preparation costs because SKJ did not present a claim for bid preparation costs to GAO and GAO did not award SKJ bid preparation costs. Furthermore, defendant argues, "[t]o the extent SKJ is appealing GAO's decision, this [c]ourt's bid protest jurisdiction, under 28 U.S.C. § 1491(b)(1), does not ... allow it to act as a reviewing authority over GAO decisions made pursuant to GAO's bid protest authority, 31 U.S.C. § 3554." Def.'s Mot. to Dismiss at 6. Defendant also argues that

"[t]o the extent that there was an implied contract to consider SKJ's bid fairly, the Contract Disputes Act ('CDA') [requires that] ... all contract claims against the [g]overnment shall be in writing and shall be submitted to the contracting officer for a decision." *Id.* at 6–7 (citing 41 U.S.C. § 605(a)). Consequently, because plaintiffs had not submitted a written claim for bid preparation costs to the contracting officer or to GAO prior to instituting this action, defendant argues that their complaint warrants dismissal.

Plaintiffs argue that SKJ did indeed submit a claim for bid preparation costs, which was rejected by the contracting officer on the basis that the claim needed to be submitted to GAO. Plaintiffs generally argue that because SKJ was treated unfairly as a bidder, SKJ is entitled to restitution for costs incurred for defendant's breach of the implied-in-fact contract.

The Tucker Act grants this court jurisdiction over "bid preparation and proposal costs" in a bid protest action. 28 U.S.C. § 1491(b)(2). The evidence presented to the court in this case does not itemize with any specificity plaintiffs' bid preparation and proposal costs; nor does it indicate to the court that SKJ submitted a claim to GAO for bid preparation costs. Nevertheless, the court must broadly construe plaintiffs' complaint favorably to the pleader. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

Despite the fact that the Tucker Act generally allows this court to entertain jurisdiction over a claim for bid preparation and proposal costs, with respect to SKJ's specific claim for bid preparation costs, such claim is not justiciable in the present case. The facts, as presented to the court by the parties, reflect that after SKJ successfully challenged the award of the contract to Policy Research with GAO, GAO recommended that:

> [T]he agency amend the RFQ to state the desired content of proposals and criteria to be applied in evaluating them and selecting the winner.... The agency should obtain revised quotations and if, upon reviewing quotations in response to the amended RFQ, the agency selects other than Policy

Research, we recommend that HHS cancel that firm's purchase order and award to the selected company.

Compl. Ex. 3 at p. 6. As previously stated, pursuant to GAO's recommendation, HHS terminated the original contract awarded to Policy Research and issued an amended RFQ that was republished as RFQ No. 03M000101 on March 7, 2003. Having terminated for convenience the contract awarded to Policy Research and having issued a new RFQ to procure the necessary services, HHS effectively cancelled the defective solicitation as well. *See CCL Serv. Corp. v. United States*, 43 Fed.Cl. 680, 688 (1999). Accordingly, because the original August 28, 2002 RFQ that served as the basis of GAO's January 13, 2003 recommendation, and, which underlies this lawsuit, was cancelled with the termination for convenience of the contract, there is no solicitation or contract upon which SKJ could base its claim for bid preparation and proposal costs before this court. SKJ's request for bid preparation and proposal costs is premised upon a solicitation and contract that were cancelled. SKJ never protested with GAO the second amended solicitation dated March 7, 2003, which was also awarded to Policy Research, and it is not protesting that amended solicitation here. Instead, plaintiffs' cause of action for bid protest and preparation costs rests wholly upon the first solicitation and contract award, which HHS cancelled pursuant to the January 13, 2003 GAO recommendation.

Cases from this court have held that a contractor cannot seek bid preparation and proposal costs based upon a solicitation and award that have been cancelled. For example, in the post-award bid protest case, *CCL Service*, 43 Fed.Cl. at 680, the Defense Information Systems Agency (DISA) awarded seven contracts pursuant to solicitations for computer maintenance service. *Id.* at 681. Plaintiffs filed a protest of the award to a

competitor in this court. Because the lawsuit was filed several weeks before performance commenced, plaintiffs did not seek a temporary restraining order or a preliminary injunction. After protracted litigation and failed settlement attempts, DISA issued a termination for convenience with regard to each of the seven contracts at issue. *Id.* at 684. Defendant then filed a motion for judgment on the pleadings, or in the alternative, for dismissal for lack of jurisdiction. Because DISA cancelled the contract awards, defendant argued that the matter was now moot. *Id.* Defendant further argued that the cancellation of the contract awards was the only relief plaintiffs would be entitled to if they prevailed in the litigation. *Id.* Defendant argued that the court should dismiss the case on the pleadings. In the alternative, defendant argued that the termination for convenience and resolicitation of the contracts divested the parties of standing and devoided the court of subject matter jurisdiction. *Id.*

Plaintiffs, on the other hand, contended that dismissal was not warranted because, although the contract awards were terminated for convenience, DISA had not technically cancelled the solicitation under which they were awarded. Plaintiffs also argued that bid preparation and proposal costs would be an appropriate remedy since the solicitation created an implied-in-fact contract to treat all of the bids honestly and fairly. *Id.* at 685.

The court first noted that the implied-in-fact contract theory by which plaintiffs claimed entitlement to bid preparation and proposal costs has been superceded by the ADRA. *Id.* at 687; *see also* analysis *supra* Section II.A. The court then went on to discuss the doctrine of mootness with respect to defendant's argument that the termination for convenience and cancellation of the solicitation rendered moot any remaining issues in the case.[8] *CCL Service*, 43 Fed.Cl. at 689.

---

8. The "mootness" doctrine requires courts to entertain matters in which there is a live justiciable issue. *CCL Serv. Corp.*, 43 Fed.Cl. at 688 (citations omitted). A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Id.* (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642

(1979)); *see also CW Government Travel*, 46 Fed. Cl. at 557 (citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). A case will not be considered moot if other consequences of defendant's actions remain. *CCL Serv. Corp.*, 43 Fed.Cl. at 688 (citing *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir.1998)). " 'Mootness of an action relates to

Plaintiffs conceded that the solicitation regarding the contracts had been cancelled as a result of the written assurances they received from the agency guaranteeing that the requirements would be obtained via a new solicitation. *Id.* The court then determined that plaintiffs' request for declaratory and injunctive relief was moot in light of the cancellation of the contracts. *Id.* at 690 (citing *Durable Metals Prods., Inc. v. United States*, 27 Fed.Cl. 472, 477 (1993)).

In *CCL Service*, plaintiffs' claim for bid preparation and proposal costs was also viewed as moot in light of the fact that the court was not given an opportunity to decide the merits of the award. "[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs." *Id.* "The cancellation of the solicitation prevents the reinstatement of any award ... under the original solicitation, so the dispute over the award is resolved and will not reoccur. Cancellation of the solicitation also moots any question regarding the propriety of the award to [the competitor]." *Id.* "Having negated any impropriety [in the procurement process] by cancelling the award and the solicitation, DISA has precluded the court from making a finding regarding [whether an error occurred in the procurement process]. Significantly, without reaching the merits of the first question [whether error occurred in the procurement process], analysis with regard to the second question [whether plaintiffs are entitled to bid preparation and proposal costs] cannot proceed." *Id.* In *CCL Service*, there was no decision on the merits as to DISA's cancellation of the solicitation since plaintiffs never asserted a challenge to the cancellation. Without that prerequisite, the court was unable to grant relief for bid preparation and proposal costs since no issue was before the court for resolution. *Id.* at 693.

In this instance, SKJ successfully challenged the award of the original contract to Policy Research before GAO, resulting in the termination of the contract and the amendment of the RFQ. As in *CCL Service*, be-

cause the original contract and solicitation at issue here were cancelled, there is no matter before the court for resolution upon which SKJ can base its claim for bid preparation and proposal costs. As a practical matter, SKJ would have been better served by bringing the claim for bid preparation costs before GAO as it did its claims for bid protest costs and attorneys' fees. GAO, at the time, clearly had the authority to entertain SKJ's claims for both bid preparation costs and bid protest costs. *See* 31 U.S.C. § 3554(c)(1). By refusing to accept the award of bid protest costs proffered first by HHS and then by GAO, and by failing to bring a claim for their bid preparation costs before GAO, plaintiffs have missed any opportunity for recovery that they might have had. GAO had jurisdiction over the disputed, yet still viable solicitation during the pendency of SKJ's challenge to the first solicitation, and this jurisdiction formed the basis of GAO's authority to grant or deny bid preparation and protest costs. However, after the contract was terminated and ceased to exist, nothing remained (*i.e.*, no disputed solicitation or contract remained) upon which to base a claim for further relief before this court. Had SKJ applied to this court for bid preparation costs prior to the agency's cancellation of the contract, then the Court of Federal Claims would have had jurisdiction to consider SKJ's claim. Had SKJ filed a bid protest to challenge the second RFQ, this court could have also considered accompanying requests for bid preparation costs. Plaintiffs, however, did neither and so, as was the case in *CCL Service*, their belated request for bid preparation costs based upon the original RFQ cannot be heard in this court.

This principle is also evidenced in *CW Government Travel*, 46 Fed.Cl. at 555. There, the Department of the Navy (Navy) issued a request for proposals (RFP) for a contract to provide travel services to the Navy. Plaintiff filed a pre-award bid protest claim for bid protest and bid preparation and

the basic dispute between the parties, not merely the relief requested. Thus, although subsequent acts may moot a request for particular relief or a count, the constitutional requirement of a case or

controversy may be supplied by the availability of other relief.' " *Id.* at 689–90 (quoting *Intrepid v. Pollock*, 907 F.2d 1125, 1131 (Fed.Cir.1990)).

proposal costs, alleging that the RFP had a commission-based, rather than transaction-based, pricing structure which was incompatible with the airline industry's trend reducing commissions. *Id.* After plaintiff filed a protest in this court, the Navy cancelled the solicitation and indicated that it intended to resolicit proposals. *Id.* at 556. Following cancellation of the RFP and the agency's notice that the RFP would be revised and reissued, defendant moved to dismiss the case for mootness. *Id.* It argued that cancellation of the RFP eliminated any basis on which plaintiff could prevail. *Id.* at 557.

The court noted that justiciability of a case, including mootness, is a question of subject matter jurisdiction, *see id.* (citing *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)), and found that dismissal for mootness was warranted in that matter. *Id.* at 558. "[B]y cancelling the solicitation, the Navy already has provided [plaintiff] with relief from any allegedly excessive requirements in the challenged solicitation." *Id.* at 559 (citing *Chas. H. Tompkins,* 43 Fed.Cl. at 723). "There is no ... relief that this court could award under this solicitation, precisely because it was cancelled." *Id.* (citing *CCL Service,* 43 Fed.Cl. at 690). "In withdrawing the RFP and re-opening the procurement, the Navy has provided the best remedy for [plaintiff]'s concerns that could be provided by this court." *Id.* Furthermore, the court noted that "[b]ecause the Navy's cancellation of the solicitation was not arbitrary or capricious, [plaintiff] may not recover bid preparation and proposal costs." *Id.* at 559 n. 6. The court lastly noted that if the new solicitation did not satisfactorily address plaintiff's concerns, then plaintiff could challenge that solicitation. *Id.* at 559. *But see Labat–Anderson, Inc. v. United States,* 42 Fed.Cl. 806 (1999) (where it was appropriate for disappointed bidder suit to go forward on claim for preparation and proposal costs based on bad faith during the procurement process since the procuring agency never cancelled the original solicitation).

Similarly, in the case at bar, because the contract and original RFQ were cancelled and an amended RFQ was issued, there remained no foundation upon which plaintiffs could base a claim for bid preparation costs in this court. As in *CW Government Travel,* plaintiffs here received the relief they sought from their October 14, 2002 GAO protest; the contract was cancelled and a new solicitation was reissued as RFQ No. 03M000101. Unfortunately for plaintiffs, here, this second solicitation was again awarded to Policy Research on June 18, 2003, and, inasmuch as plaintiffs never challenged the second award to Policy Research, plaintiffs' claims for bid protest and preparation costs are not premised on the second solicitation.[9]

Plaintiffs argue that the facts herein are similar to *Labat–Anderson* and distinguishable from *CW Government Travel.* Plaintiffs attempt to distinguish *CW Government Travel* from the instant case by focusing on the fact that in *CW Government Travel,* the bid protest there involved the pricing structure contained in the RFP. 46 Fed.Cl. at 555. Here, plaintiffs argue, there was no issue with the requirements contained in the solicitation; rather the issue was HHS's failure to evaluate SKJ's original bid properly, allowing the contract to be awarded to another bidder. Plaintiffs argue that this point distinguishes the holding in *CW Government Travel* from this matter. However, the court sees no material distinction and finds the holding in *CW Government Travel* to apply to the facts herein.

With respect to *Labat–Anderson,* plaintiffs focus on two sets of facts in that case, neither of which has any applicability here. The first concerns the payment of expenses during a stop-work order. In *Labat–Anderson,* the contract was awarded to a competitor, and then suspended so that a second round of offers could be submitted and considered. 42 Fed.Cl. at 856. After this second round, the contract was again awarded to the same competitor in what plaintiffs here appropriately characterize as a ratification of the original contract. *Id.* The successful bidder

---

9. In fact, plaintiffs March 5, 2003 request for bid protest and preparation costs pre-dates the

March 7, 2003 issuance of RFQ No. 03M000101.

then submitted claims and was reimbursed costs for the period of time the stop and start events occurred. *Id.* Plaintiff in *Labat–Anderson* argued that the agency's payment of expenses during the stop-work period evidenced the fact that the agency never intended to award the contract to Labat. However, the court in *Labat–Anderson* found that the agency was justified in reimbursing the awardee legitimate expenses incurred during the stop-work period and that such reimbursement provided no support for plaintiff's allegation of bad faith, although there was a question of whether there was factual support for all of the expenses reimbursed, thus precluding entry of summary judgment at that time. *Id.* at 857–58.

The court does not see the import of this set of facts to the instant case. The portion relied upon by plaintiffs deals with bad faith conduct on the government's part with respect to payments made by the agency to the successful bidder during stop-work periods. *Id.* at 856. However, the matter that this court must presently adjudicate is whether it has jurisdiction over plaintiffs' claim for bid preparation costs arising from SKJ's first bid protest. The court simply finds these particular facts inapposite as to whether the cancellation of the solicitation precludes plaintiffs from any award of bid preparation and proposal costs.

The second set of facts concerns the fact that the contracting officer in *Labat–Anderson* never terminated the existing contract. *Id.* at 859. After the contract was awarded to Labat's competitor, Labat's first protest was filed and the agency issued a stop-work order. *Id.* at 822. GAO sustained the protest and recommended that the agency issue an amendment to the RFP and accept additional offers. *Id.* at 823. The agency followed GAO's recommendation and after proposals were submitted, the agency rejected Labat's second offer, but it did not terminate the original contract and award a second contract to Labat's competitor. Instead, the contracting officer simply lifted the stop-work order on the existing contract and the competitor continued performance

therein. *Id.* at 829. The court found that as a result of the contracting officer's ratification of the contract to the competitor, instead of cancellation and issuance of a new solicitation, the competitor received a windfall. *Id.* at 859.

Based on the facts in *Labat–Anderson*, plaintiffs here argue that GAO merely ratified the original contract when it awarded the contract again to Policy Research, and therefore, plaintiffs argue, their claim is not moot since the original contract was simply "ratified" by the second award to Policy Research. However, this contention skews the facts. In complete contradiction to their argument, plaintiffs here admit that "HHS terminated the purchase order with Policy Research on January 17, 2003." Pls.' Supp. Brief at 3. In the instant matter, no stop-work order was issued during GAO's evaluation of the protest because the agency sought and obtained an override of the automatic stay imposed by GAO. However, as a crucial distinction, here, as opposed to the circumstances in *Labat–Anderson*, there was a clear cancellation of the original contract based on GAO's recommendation and an amended RFQ was subsequently issued on March 7, 2003. Accordingly, the holding contained in *Labat–Anderson* regarding ratification of the original contract is inapplicable to the facts herein.

Because the question of mootness goes towards the court's subject matter jurisdiction, *see CW Government Travel,* 46 Fed.Cl. at 557, it is appropriate for the court to address the justiciability of plaintiffs' claim for bid preparation and proposal costs *sua sponte. See Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.1993) ("A party, or the court *sua sponte,* may address a challenge to subject matter jurisdiction at any time, even on appeal."). Because plaintiffs' claim for bid preparation and proposal costs is moot as a result of the cancellation of the original RFQ, defendant's motion to dismiss for lack of subject matter jurisdiction is granted with respect to plaintiffs' claim for bid preparation and proposal costs.[10]

10. . The court observes that, in addition to application of the doctrine of mootness to SKJ's claim

for bid preparation costs, this doctrine would appear to be applicable to plaintiffs' claim for bid

The court notes that defendant's argument regarding plaintiffs' failure to submit a timely claim to the contracting officer under the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.* (2000) is completely inapposite. The CDA applies to government contracts, not to bid protests. Simply because plaintiffs have alleged an implied-in-fact contract does not shift this court's jurisdictional authority in this case from bid protest jurisprudence under 28 U.S.C. § 1491(b) to CDA jurisprudence under 41 U.S.C. § 601 *et seq.* *See Resource Recycling Corp. v. United States,* 56 Fed.Cl. 612, 615 (2003) (stating that this court has no jurisdiction under the CDA to adjudicate a bid protest claim); *Davis/HRGM Joint Venture v. United States,* 50 Fed.Cl. 539, 544, 546 (2001) (noting that the court did not have jurisdiction over plaintiff's post-award bid protest action alleging a termination for convenience claim since that claim falls within CDA jurisdiction, but that it did have jurisdiction over contracting officer's decision to award the contract).

### C. Subject Matter Jurisdiction Over Attorneys' Fees, Litigation Costs, etc.

 Plaintiffs finally argue that because there is authority for awarding bid protest costs, then attorneys' fees are also recoverable. Defendant asserts that because attorneys' fees are a part of bid protest costs, and because this court does not have jurisdiction over bid protest costs, then there is no jurisdiction over attorneys' fees.

The attorneys' fees sought here relate to plaintiffs' bid protest costs. For example, plaintiffs seek "Legal Fees Pursuing Claim February 2003" and "Legal Fees Pursuing Claim March 2003." Compl. Ex. 5 at p. 4. Legal fees in relation to filing a bid protest action are not bid preparation and proposal costs, but rather are bid protest costs. *AT & T Techs. v. United States,* 18 Cl.Ct. 315, 325 (1989) (stating that legal fees that are "incurred well after contract award, are not [bid and proposal] costs but are rather protest costs"). Accordingly, because the court does

not have jurisdiction over bid protest costs, the court cannot assert jurisdiction over plaintiffs' claim for attorneys' fees in relation to the bid protest. *See* analysis *supra* Section II.A.

### CONCLUSION

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed February 24, 2005 is **GRANTED;**

(2) The Clerk's office is directed to **ENTER** judgment for defendant, dismissing plaintiff's complaint filed July 8, 2004; and

(3) Each party shall bear its own costs.

---

protest costs, addressed, *supra,* as well. It would appear that the same rationale and analysis should also apply to divest the court of jurisdiction over SKJ's claims for bid protest costs, although the court need not reach this issue inasmuch as the court has already determined that it lacks jurisdiction over plaintiffs' claim for bid protest costs pursuant to 28 U.S.C. § 1491(b)(2). *See CW Government Travel,* 46 Fed.Cl. at 559 n. 6.